UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANNIE RAY BAKER,

Petitioner,

                                           CASE NO. 2:13-CV-11092

v.                                    CHIEF JUDGE GERALD E. ROSEN

                                          MAGISTRATE JUDGE PAUL J. KOMIVES

JOE BARRETT,

Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.    *Prosecutorial Misconduct/Double Jeopardy (Claim III)* . . . . . . . . . . . . . . . . . . . . . . 12
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
              a. Sufficiency of the Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
              b. Double Jeopardy     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    F.    *Jury Selection (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         1.    *Biased Juror* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
              a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
              b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         2.    *Peremptory Challenge* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    G.    *Right to Present a Defense (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    H.    *Prejudicial Evidence (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    I.    *Sentencing (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    J.    *Cumulative Error (Claim VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    K.    *Ineffective Assistance of Counsel (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . 31
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
         2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
              a. Plea Advice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
              b. Intoxication Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
              c. Confirming Expert's Facts and Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
              d. Failing to Call Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
              e. Failing to Object to Prosecutorial Misconduct . . . . . . . . . . . . . . . . . . . . 40
         3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
    L.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . 43

        1.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

        2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

  M.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

III.        <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*   *   *   *   *

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.      <u>REPORT</u>:

A.     *Procedural History*

      1.      Petitioner Dannie Ray Baker is a state prisoner, currently confined at the Cooper Street Correctional Facility in Jackson, Michigan.

      2.      On July 22, 2008, petitioner was convicted of negligent homicide, MICH. COMP. LAWS § 750.324; operating a motor vehicle while intoxicated causing death (OWI), MICH. COMP. LAWS § 257.625(4); and operating a vehicle while license suspended causing death, MICH. COMP. LAWS § 257.904(4), following a jury trial in the Wayne County Circuit Court. On August 12, 2008, he was sentenced to two concurrent terms of 10-15 years' imprisonment on the OWI and suspended license convictions, and to a concurrent term of 16-24 months' imprisonment on the negligent homicide conviction.

      3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

     I.      THE TRIAL COURT IMPROPERLY ADMITTED UNDULY PREJUDICIAL TESTIMONY ELABORATELY DESCRIBING THE DECEDENT'S INJURIES AND PHOTOGRAPHS DEPICTING HER INJURIES AT THE ACCIDENT SCENE.

     II.     MR. BAKER IS ENTITLED TO RESENTENCING WHERE THE TRIAL COURT ERRED IN DEPARTING UPWARD FROM THE SENTENCING GUIDELINES WITHOUT SUBSTANTIAL AND COMPELLING

2

REASONS.

III.    THE TRIAL COURT ERRONEOUSLY APPLIED JAIL CREDIT TO ONLY ONE OF MR. BAKER'S THREE CONCURRENT SENTENCES.

IV.    THE PRESENTENCE REPORT MUST BE CORRECTED TO ACCURATELY DESCRIBE THE CONVICTION OFFENSE.

The court of appeals found no merit to petitioner's first three claims, and affirmed his convictions and sentences.  However, the court remanded for correction of the presentence report.  *See People v. Baker*, No. 287849, 2010 WL 746396 (Mich. Ct. App. Mar. 4, 2010) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  Petitioner also raised two additional claims:

I.    THE TRIAL COURT IMPROPERLY DENIED THE DEFENSE COUNSEL THE USE OF A PEREMPTORY CHALLENGE (INSANITY) DURING THE JURY SELECTION PROCESS ESSENTIALLY DENYING THE DEFENDANT HIS RIGHT TO OBTAIN A FAIR AND IMPARTIAL JURY, IN VIOLATION OF DEFENDANT'S 5TH AND 14TH FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR HEARING.

II.    THE TRIAL COURT IMPROPERLY DENIED THE DEFENDANT THE USE OF AN EXPERT WITNESS'S OPINION WHICH WOULD HAVE STATED DEFENDANT'S LEVEL OF INTOXICATION BY VARIOUS BLOOD ALCOHOL LEVELS.  THE NET EFFECT OF THIS RULING DAMAGED THE CREDIBILITY OF DR. SHIENER WITH THE JURY.

The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Baker*, 488 Mich. 870, 788 N.W.2d 428 (2010).

5.    Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.    DEFENDANT WAS DENIED FEDERAL AND STATE DUE PROCESS WHERE APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILURE TO RAISE THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADVISE THE DEFENDANT TO ACCEPT A FAVORABLE PLEA BARGAIN.

3

II.     DEFENDANT WAS DENIED FEDERAL AND STATE DUE PROCESS
        WHERE TRIAL COUNSEL WAS INEFFECTIVE FOR: (A) NOT
        ADVISING THE ACCEPTANCE OF A PLEA AGREEMENT; (B) NOT
        DEVELOPING INVOLUNTARY INTOXICATION DEFENSE; (C) NOT
        CONFIRMING FACTS AND DATA PER MRE 705; AND (D) NOT
        CALLING VARIOUS WITNESSES.

III.    DEFENDANT WAS DENIED FEDERAL AND STATE DUE PROCESS
        BY HIS TRIAL COUNSEL'S INEFFECTIVENESS BY NOT OBJECTING
        TO THE PROSECUTORIAL MISCONDUCT OF VIOLATING
        MICHIGAN RULES OF EVIDENCE 701, 702, 703 AND 705.

IV.     DEFENDANT WAS DENIED FEDERAL AND STATE
        CONSTITUTIONAL RIGHTS OF DUE PROCESS BY THE
        PROSECUTORIAL MISCONDUCT OF MULTIPLE, SIMULTANEOUS
        CHARGES CREATING DOUBLE JEOPARDY BY THE CHARGING
        OFFENSES.

V.      THE TRIAL COURT ABUSED ITS DISCRETION BY NOT DISMISSING
        JUROR NO. 7 AND DENYING THE DEFENSE THE USE OF
        PEREMPTORY CHALLENGE DURING JURY SELECTION.

VI.     THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED
        THE DEFENSE THE USE OF EXPERT WITNESS FACTS AND DATA,
        PER MRE 705.

VII.    THE CUMULATIVE EFFECT OF THE ABOVE UNCONSTITUTIONAL
        FEDERAL AND STATE VIOLATIONS DICTATE A REVERSAL
        AND/OR REMAND BECAUSE THERE IS REASONABLE
        PROBABILITY THAT THE ERRORS WERE SO SERIOUS THAT THEY
        COULD HAVE CHANGED THE OUTCOME OF THE TRIAL.

On November 17, 2011, the trial court denied petitioner's motion for relief from judgment,

concluding that petitioner's claims were barred by MICH. CT. R. 6.508(D)(3) because he failed to

raise the claims on direct appeal and could not show actual prejudice. In making this determination,

the trial court rejected the merits of each claim. *See People v. Baker*, No. 07-023800-01-FH (Wayne

County, Mich., Cir. Ct. Nov. 17, 2011) [hereinafter "Trial Ct. op."]. The Michigan Court of Appeals

and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders.

4

*See People v. Baker*, 493 Mich. 894, 822 N.W.2d 564 (2012); *People v. Baker*, No. 308257 (Mich. Ct. App. June 19, 2012).

6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 11, 2013.  As grounds for the writ of habeas corpus, he raises the first two claims raised on direct appeal in the Michigan Court of Appeals, the second through sixth claims raised in his motion for relief from judgment, and a claim of cumulative error.

7.     Respondent filed his answer on September 23, 2013.  He contends that petitioner's second through fifth and eighth claims, as well as portions of his first claim, are barred by petitioner's procedural default in the state courts.  Respondent also argues that each of petitioner's claims is without merit.

8.     Petitioner filed a reply to respondent's answer on November 12, 2013.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from a traffic accident on Michigan Avenue in the city of Inkster on November 9, 2007.  On that date, petitioner was scheduled to report to the Inkster Police Department to spend the weekend in jail.[1]  Shortly before arriving petitioner consumed half to three-quarters of a pint of vodka, and took two Ambien sleeping pills.  He did so, he claimed, to help him sleep while at the jail.  Petitioner claimed that he did not know what the pills were that he took, but had gotten them from his girlfriend's mother.  When he arrived at the jail, communication assistant Christine Millisor noticed the smell of alcohol on petitioner, and informed Officer Doug Parson of this fact.  Eventually Lieutenant Thomas Diaz administered a preliminary breath test to petitioner,

---

[1]Petitioner was a "weekender," meaning a person who had been convicted of a misdemeanor and was serving his sentence on weekends only.

which produced a result of .09. Diaz told Baker that he would have to leave, as jail policy disallowed weekenders to report under the influence of drugs or alcohol. Petitioner falsely informed petitioner that he had been dropped off at the station. Diaz told petitioner to call for a ride, and petitioner left the station.

Later that evening, Deborah Harvel was driving on Michigan Avenue, and was stopped at a red light at the intersection of Henry Ruff Street, about a mile away from the police station. She saw a white truck approach from behind at a high rate of speed. The truck's headlights were not on. She moved to avoid the truck, and saw it collide with a red Ford Focus, driven by Marie Barron. The truck pushed the Focus into the intersection, where it caught fire. Other witnesses to the accident gave similar testimony. Sergeant Kevin Lucidi, an accident reconstruction expert, testified that petitioner's vehicle was traveling at least 53 miles per hour at the time of impact, and that there were no tire marks indicating that petitioner had attempted to brake prior to the collision. Officer John Hankins responded to the accident. He recognized petitioner as the driver of the white truck. Hankins smelled the odor of intoxicants, and found a bottle of vodka in the truck. A blood test revealed petitioner's blood alcohol content after the accident to be .11 grams of alcohol per 100 milliliter of blood. Barron died as a result of the collision. Dr. Lokman Sung, the medical examiner who performed an autopsy on Barron's body, testified that she died of multiple injuries caused by the collision. Dr. Sung extensively described the victim's injuries. Detective Anthony DeGreco described photographs he took at the scene, and the photographs were admitted into evidence.

Petitioner presented a defense of temporary insanity caused by involuntary intoxication. Petitioner denied remembering anything after the time he took the breathalyzer test at the police station, and claimed to have been in a black-out from that time until he woke in the jail the following

morning.  In support of this defense, petitioner presented the testimony of Dr. Benedict Kuslikis, a toxicologist.  Dr. Kuslikis testified that, based on the results of the breathalyzer and blood tests, and the amount of vodka consumed and food eaten by petitioner prior to the accident, petitioner's blood alcohol level at the time of the accident was approximately .10.  This would have been insufficient to cause petitioner to black out, which usually does not occur until a person's blood alcohol content reaches a level of .20 to .25.  Dr. Kuslikis opined that petitioner's behavior was caused by an adverse reaction to Ambien.

Dr. Gerald Shiener, a psychiatrist specializing in addiction, likewise testified that an individual generally must have a blood alcohol content of .25 or higher before blacking out and not responding to his environment.  He testified that Ambien only causes part of the brain to enter a sleep state, while allowing other parts to function.  People who take Ambien can fall asleep but still engage in complex behaviors such as walking, cooking, and driving.  Based on his review of the evidence, Dr. Shiener opined that petitioner's behavior was caused by ingestion of Ambien, and could not have been caused by alcohol ingestion alone.  He testified that petitioner's intoxication was involuntary because petitioner did not know Ambien would affect him in this way.  Dr. Shiener also concluded that petitioner met the legal definitions of mental illness and insanity at the time of the accident, because the Ambien impaired his ability to formulate thoughts, analyze or respond to his environment, control impulses, appreciate the wrongfulness of his actions, or control his behavior.

In rebuttal, the prosecution presented the testimony of Dr. Priya Rao.  She opined that petitioner was voluntarily intoxicated at the time of the accident, and that the accident could have been caused by the effects of alcohol alone.

C.   *Procedural Default*

Respondent first contends that several of petitioner's claims are barred by petitioner's various procedural defaults in the state court.  Although several of petitioner's claims are likely defaulted, the Court should nevertheless address the claims on the merits.  With respect to the defaulted claims petitioner raises a claim that either trial or appellate counsel was ineffective for failing to properly present the claim in the state courts.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims.  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

Moreover, while procedural issues in a habeas case should ordinarily be resolved first, neither exhaustion nor procedural default is jurisdictional, and "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."  *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995); *cf. Granberry v. Greer*, 481

8

U.S. 129, 135 (1987) (court may dismiss unexhausted petition on the merits if that course serves judicial economy); 28 U.S.C. § 2254(b)(2) (authorizing court to dismiss unexhausted claims on the merits).  Because it is clear that these claims are without merit, the Court may deny them on this basis without resolving respondent's exhaustion and procedural default arguments.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the

10

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Although the bulk of petitioner's claims may be procedurally defaulted, the deferential standard of review set forth in § 2254(d) is applicable to an analysis of the claims on the merits. With respect to claims petitioner failed to raise on direct appeal, the trial court considered and

11

rejected the merits of each claim, either in the alternative or as part of its analysis of actual prejudice. Where a state court addresses the merits as an alternative ground for decision notwithstanding its application of a procedural bar, the alternative merits adjudication is considered "on the merits" for purposes of § 2254(d) and is entitled to deference under the AEDPA. *See Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008); *see also*, *Rolan v. Coleman*, 680 F.3d 311, 319-20 (3d Cir. 2012) (citing cases). Similarly, where a state court considers and decides the merits of a claim as part of its procedural default analysis, AEDPA deference applies. *See Jermyn v. Horn*, 266 F.3d 257, 279 n.8 (3d Cir. 2001). Accordingly, the AEDPA standard of review is applicable to petitioner's claims.

E.     *Prosecutorial Misconduct/Double Jeopardy (Claim III)*

Petitioner contends that his right to be free from double jeopardy was violated when the prosecutor charged him simultaneously with negligent homicide and OWI causing death arising from the same accident, because his simultaneous conviction of these offenses is barred by the Double Jeopardy Clause and because there was insufficient evidence to support the OWI charge. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

Generally, a prosecutor has broad discretion in deciding when and what to prosecute. As the Supreme Court has explained, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Nevertheless, the Due Process Clause of the Constitution prohibits the government from undertaking a prosecution based solely on a vindictive motive. *See id*. at 363. "Because a claim of vindictive prosecution 'asks a court to exercise juridical power over a "special

12

province" of the Executive,' courts must begin from a presumption that the government has properly exercised its constitutional responsibilities[.]" *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985))). "This 'presumption of regularity' in prosecutorial decision making can only be overcome by 'clear evidence to the contrary,' The standard of proof 'is a demanding one.'" *Id.* (quoting *Armstrong*, 517 U.S. at 463-64). In certain cases, a presumption of vindictiveness "may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct." *United States v. Goodwin*, 457 U.S. 368, 373 (1982). A presumption of vindictiveness arises in circumstances in which a reasonable likelihood of vindictiveness exists. *See Blackledge v. Perry*, 417 U.S. 21, 27 (1974). Where the presumption of vindictiveness does not arise, the defendant bears the burden of proving actual vindictiveness. *See Wasman v. United States*, 468 U.S. 559, 569 (1984).

2. *Analysis*

Here, petitioner has pointed to no actual evidence of vindictiveness, nor has he pointed to any circumstances giving rise to a presumption of vindictiveness. Petitioner's double jeopardy and sufficiency of the evidence arguments are insufficient to give rise to a presumption of vindictiveness, because they are without merit.

a. *Sufficiency of the Evidence*

With respect to the sufficiency of the evidence, the question is not whether the evidence at trial was sufficient to prove petitioner's guilt beyond a reasonable doubt. As explained above, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests

13

entirely in [the prosecutor's] discretion." *Bordenkircher*, 434 U.S. at 364.  Here, there was more than ample probable cause to support the OWI causing death charges, because the evidence at trial was sufficient to prove petitioner's guilt beyond a reasonable doubt.  The elements of OWI causing death are: "(1) the defendant was operating his or her motor vehicle in violation of MCL 257.625(1), (3), or (8); (2) the defendant voluntarily decided to drive, knowing that he or she had consumed an intoxicating agent and might be intoxicated; and (3) the defendant's operation of the motor vehicle caused the victim's death." *People v. Schaefer*, 473 Mich. 418, 434, 703 N.W.2d 774, 784 (2005).  Here, as the trial court correctly explained, "[t]he evidence presented at trial established that [petitioner] was legally intoxicated at the time of the accident, that he voluntarily drove his truck knowing that he had consumed intoxicating liquor, and that defendant's operation of his truck, which he drove into the back of the victim's car at 53 mph, caused the victim's death."  Trial Ct. op., at 5.  Because the prosecution presented sufficient evidence to prove petitioner's guilt at trial, it clearly had probable cause to believe that petitioner had committed OWI causing death when it charged him with that crime.  Thus, as the trial court rightly concluded, "the prosecutor did not engage in misconduct by charging [petitioner] with the crime."

### b. Double Jeopardy

Nor can petitioner show vindictiveness based on his double jeopardy claim, because that claim is without merit.  The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after

14

acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).  However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them."  *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986).  As the Supreme Court explained, when "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."  *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  In determining whether the Michigan legislature intended to authorize separate, cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage*, 793 F.2d at 1015; *see also*, *Hunter*, 459 U.S. at 368.  Thus, the question is whether the Michigan Legislature intended that convictions for felony murder and the underlying predicate felony gives rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double

jeopardy violation. *Johnson*, 467 U.S at 499 n.8. In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

Where the legislative intent is not clear, the Court must apply the *Blockburger* "same elements" test to determine whether multiple prosecutions or punishments violate the Double Jeopardy Clause. Under this test:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696 (1993) (citations omitted); *see also*, *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

Here, because OWI causing death and negligent homicide each require proof of an element that the other does not, petitioner's simultaneous conviction on both offenses arising from a single course of conduct does not violate the Double Jeopardy Clause. As explained above, the elements of OWI causing death are: "(1) the defendant was operating his or her motor vehicle in violation of MCL 257.625(1), (3), or (8); (2) the defendant voluntarily decided to drive, knowing that he or she had consumed an intoxicating agent and might be intoxicated; and (3) the defendant's operation of the motor vehicle caused the victim's death." *People v. Schaefer*, 473 Mich. 418, 434, 703 N.W.2d 774, 784 (2005). The elements of negligent homicide are: "(1) that the defendant was operating a motor vehicle, (2) the defendant was operating the vehicle at an unreasonable speed or in a negligent manner, (3) the defendant's negligence was a substantial cause of an accident resulting in injuries

to the victim, and (4) those injuries caused the victim's death." *People v. MacDonald*, No. 241404, 2003 WL 22902842, at *1 (Mich. Ct. App. Dec. 9, 2003) (per curiam) (citing MICH. COMP. LAWS § 750.324; *People v. Tims*, 449 Mich. 83, 534 N.W.2d 675 (1995); *People v. Paulen*, 327 Mich. 94, 41 N.W.2d 488 (1950)). Thus, OWI causing death requires proof that petitioner was intoxicated under § 254.625, while negligent homicide requires no such proof. Conversely, negligent homicide requires proof that petitioner operated his motor vehicle in a negligent manner, while OWI causing death requires no such proof (requiring only that petitioner voluntarily decide to drive knowing that he consumed intoxicating liquor). Because each statute requires proof an element that the other does not, petitioner's conviction of both offenses did not violate the Double Jeopardy Clause. *See People v. Brady*, No. 238736, 2003 WL 21675882, at *4 (Mich. Ct. App. July 17, 2003) (per curiam). It therefore follows that the prosecutor did not abuse his charging discretion in charging both offenses. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.   *Jury Selection (Claim IV)*

Petitioner next contends that he was denied his right to due process when the trial court failed to excuse a juror for cause, and failed to allow him to use a peremptory challenge to excuse the juror. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.   *Biased Juror*

a. *Clearly Established Law*

The Sixth Amendment commands that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend VI. This provision guarantees the right to a trial by an impartial jury. *See Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968). The constitutional standard of fairness requires that a defendant in a criminal case have a

17

panel of impartial, "indifferent" jurors. *See Morgan v. Illinois*, 504 U.S. 719, 726 (1992); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "*Voir dire* protects this right by exposing possible biases, both known and unknown, on the part of potential jurors." *United States v. Perkins*, 748 F.2d 1519, 1531 (11th Cir. 1984) (internal quotations omitted). A perfectly uninformed jury is not required; all that is required is "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). A habeas court's review of a state court's determination of jury impartiality is highly deferential. *See Lucero v. Kirby*, 133 F.3d 1299, 1308 (10th Cir. 1998) (discussing *Mu'Min v. Virginia*, 500 U.S. 415, 422-28 (1991)); *Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996). A finding of jury impartiality is a factual determination, and is therefore presumed correct on habeas review unless a petitioner presents clear and convincing evidence to the contrary. *See Gall v. Parker*, 231 F.3d 265, 309 (6th Cir. 2000).

### b. Analysis

During *voir dire*, defense counsel asked if the fact that the case involved alcohol would be problematic for any of the jurors, leading to the following exchange:

| | |
|---|---|
| MR. GIOVANNI: | Let me go back to my question then. Does anybody here think they could not judge fairly a case involving alcohol? Yes, ma'am? |
| JUROR #7: | I don't know if it's relevant but my husband is currently on probation for DUI. |
| MR. GIOVANNI: | Okay. |
| THE COURT: | Well would that cause you a bias? |
| JUROR #7: | I don't know but I felt I needed to– |
| THE COURT: | Well I need to know the answer to my question. Would the fact that your husband is on probation for DUI cause you a bias in this case? |

18

| | |
|---|---|
| JUROR #7: | I don't think so.  I'm not sure. |
| THE COURT: | Well I don't understand why you're not sure.  Your husband doesn't have anything to do with this case, true? |
| JUROR #7: | True. |
| THE COURT: | And do you think your husband was treated fairly or unfairly? |
| JUROR #7: | Fairly. |
| THE COURT: | And so similarly, can you be fair in this case to the Defendant? |
| JUROR #7: | Yes. |

Trial Tr., Vol. I, at 22-23.  Counsel did not further question Juror #7, nor did he seek to excuse her from the jury, either for cause or through a peremptory challenge.  On postconviction review the trial court rejected petitioner's claim, concluding that petitioner had "not established actual prejudice where the juror ultimately indicated that she could judge the case fairly[.]" Trial Ct. op., at 6.  This determination was reasonable.

Here, Juror #7 never indicated a bias.  In response to defense counsel's question, she merely informed the parties and the court that her husband was on probation for a drunk driving offense, indicating that she just felt "she needed to" inform the court of this fact.  She stated that she thought her husband had been treated fairly, and affirmed that she could fairly judge the case against petitioner.  The Court presumes that these statements were truthful, and petitioner has pointed to nothing to call into question the sincerity of the jurors' assurances.  *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (question in case of juror bias is whether juror swore "that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987) (habeas

relief not warranted on petitioner's claim of juror bias where juror stated he could be impartial despite his relationship with the victim).   Beyond the transcript itself, petitioner has pointed to no evidence that Juror #7 was ultimately biased against him.   The mere fact that Juror #7's husband had been convicted of a drunk driving offense does not, standing alone, give rise to a presumption of bias.   *See Jones v. Cooper*, 311 F.3d 306, 312-13 (4th Cir. 2002); *United States v. Ross*, 263 F.3d 844, 847 (8th Cir. 2001).   Because this Court's review of the trial court's impartiality finding is highly deferential, and because petitioner has presented no clear and convincing evidence to contradict the trial court's finding, petitioner is not entitled to habeas relief on this claim.

Petitioner also contends that the jury was biased against him as a result of comments made by prospective jurors during *voir dire*.   Specifically, he points to the comments of Juror #2, who stated that she viewed petitioner's involuntary intoxication defense as "kind of a cheap cop out," Trial Tr., Vol. I, at 20, and the comments of Juror #27, who stated that she could not be fair because she has "a problem with people that drink and kill people," *id*. at 26.   to succeed on this basis "petitioner 'must demonstrate either that the trial resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved "such a probability that prejudice will result that it is deemed inherently lacking in due process."'" *Lucero v. Kirby*, 133 F.3d 1299, 1308 (10th Cir. 1998) (quoting *Brecheen v. Reynolds*, 41 F.3d 1343, 1350 (10th Cir. 1994) (quoting *Estes v. Texas*, 381 U.S. 532, 542-43 (1965))); *cf. Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000)).   Here, "petitioner has not identified any actual prejudice on the part of any juror." *Lucero*, 133 F.3d at 1308.   He does not identify any comments from the *voir dire*, or point to any other evidence in the record, that the jurors who ultimately sat on his jury were actually biased.   The jurors who made the comments were excused, the trial judge repeatedly instructed the jury that it was obligated to follow

20

the law, and a review of the *voir dire* transcript indicates that all of the jurors who sat on petitioner's case stated that they could be fair and impartial and would decide the case based solely on the evidence presented at trial.  "Absent any reasons [beyond speculation] to suspect as untrue the juror's claims of ability to remain impartial despite exposure to improper . . . comment, the court should credit those responses." *United States v. Hernandez,* 84 F. 3d 931, 936 (7th Cir. 1996) (quoting *United States v. Moutry*, 46 F. 3d 598, 603 (7th Cir.1995)).  In these circumstances, "[t]he spectre of bias or prejudice must become considerably more tangible before it can overcome the general presumption in favor of jury impartiality."  *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979) (no presumption of prejudice arose from presence in venire panel of a former DEA informant); *see also*, *United States v. Cantwell*, 41 Fed. Appx. 263, 269 (10th Cir. 2002) (no presumption of prejudice arose from comments of three jurors indicating that they were familiar with defendant's pyramid scheme; jurors' comments were brief and quickly terminated by the court and there was no evidence of actual bias on the part of the remaining jurors); *United States v. Shropshire*, 498 F.2d 137, 139 (6th Cir. 1974).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

> 2.    *Peremptory Challenge*

Petitioner also claims that he was denied his right to due process because the trial court failed to allow him to exercise a peremptory challenge to excuse Juror #7.  This claim fails for two reasons.  First, the *voir dire* transcript does not show counsel ever attempting to exercise a peremptory challenge to excuse Juror #7 but being prevented from doing so by the trial court.  Second, even had the trial court prevented counsel from exercising a peremptory challenge, this would give rise to no federal constitutional claim cognizable on habeas review.  The Supreme Court "has consistently held

21

that there is no freestanding constitutional right to peremptory challenges." *Rivera v. Illinois*, 556 U.S. 148, 157 (2009). Rather, peremptory challenges are a creature of state law that the states are free to grant or withhold, and "[w]hen states provide peremptory challenges . . . they confer a benefit beyond the minimum requirements of a fair jury selection." *Id*. at 157-58 (internal quotation omitted). For this reason, "the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id*. at 158. Further, as explained above, petitioner has failed to show that Juror #7 was actually biased. Thus, petitioner's "jury was impartial for Sixth Amendment purposes." *Id*. at 159. In other words, petitioner "received precisely what due process required: a fair trial before an impartial and properly instructed jury, which found him guilty of every element of the charged offense." *Id*. at 162. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Right to Present a Defense (Claim V)*

Petitioner contends that he was denied his right to present a defense by the exclusion of Dr. Shiener's reports. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law. Implicit in these provisions is the right to present a meaningful defense. As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a

22

defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408. Although the right to present a defense is fundamental, it is not absolute. Thus, the right must yield to other constitutional rights, *see e.g.*, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308. A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315). Thus, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001)) (alterations by quoting court).

23

2.     *Analysis*

In his brief in support of his habeas application, petitioner contends that he was denied his right to present a defense because the trial court did not allow him to introduce Dr. Shiener's "prepared reports on the presence of medication, and levels of alcohol in the petitioner's blood, before, during, and after the accident." Pet'r's Br., at 49. The record, however, belies this claim. At no point during Dr. Shiener's testimony did petitioner's counsel attempt to introduce Dr. Shiener's report.  On the contrary, the prosecutor sought to introduce the report on cross-examination, and defense counsel objected to the admission of the report because it contained matters beyond the scope of Dr. Shiener's direct examination. *See* Trial Tr., Vol. IV, at 30-31.  The trial court partially sustained the objection, ruling that the prosecutor could only use the report with respect to matters relevant to the trial, and the report itself was not received as an exhibit.  Because petitioner never sought to introduce Dr. Shiener's report itself, his right to present a defense was not violated. *See Green v. Estelle*, 488 F.2d 918, 920 (5th Cir. 1973) (no denial of compulsory process where defendant did not attempt to call witness or ask for a continuance to do so, and the "state court was left totally unaware of the defendant's desire to call" the witness); *United States v. Mickens*, 837 F. Supp. 745, 748 (S.D. W. Va. 1993), *aff'd*, 53 F.3d 329 (4th Cir. 1995).

Moreover, even had counsel sought to introduce Dr. Shiener's report, petitioner could still not show a violation of his right to present a defense.  Dr. Shiener testified extensively in support of petitioner's defense, providing comprehensive testimony on: (1) the effects of Ambien on a person, *see* Trial Tr., Vol. IV, at 15-17; (2) petitioner's blood alcohol content, *see id.* at 18; and (3) plaintiff's symptoms being inconsistent with alcohol intoxication, *see id.* at 21-24.  Dr. Shiener also provided detailed testimony supporting his opinions that the accident was caused by petitioner's

24

consumption of Ambien, *see id*. at 24-27, and that petitioner was suffering from a temporary mental illness at the time of the accident caused by the Ambien, *see id*. at 28-30.  As the trial court reasonably concluded, "Dr. Shiener gave extensive testimony regarding the effects of Ambien and alcohol on [petitioner's] mental state at the time of the accident and [petitioner] does not point to anything in Dr. Shiener's reports that differed from or added to his testimony at trial."  Trial Ct. op., at 6.  Thus, the exclusion of the report did not the exclusion of this evidence did not "infringe upon a weighty interest of" petitioner, *Scheffer*, 523 U.S. at 308, by excluding evidence that, evaluated in the context of the entire record, would have "'create[d] a reasonable doubt that did not otherwise exist.'"  *Blackwell*, 459 F.3d at 753 (quoting *Washington*, 255 F.3d at 47).

In his brief, petitioner also points to a page of the trial transcript in which the trial court prohibited Dr. Shiener from answering a hypothetical question posed by counsel:

> Doctor, a person who was driving in the following manner, down a roadway with headlights off after dark traveling thirteen miles approximately over the speed limit, weaving all over the road, suddenly veering immediately before an accident, approaching a traffic light that was already red and not slowing down, having other vehicles with tail lights and/or brake lights on at the intersection that the person was approaching and then having a collision without ever applying the brakes prior to the collision, now what, what I want to ask you is what kind of blood alcohol level would be associated in your mind or consistent with that type of operation of a motor vehicle?

Trial Tr., Vol. IV, at 18.  The trial court sustained the prosecutor's objection on the ground that this question called for speculation.  Petitioner cannot show that the exclusion of Dr. Shiener's answer to this hypothetical deprived him of his right to present a defense.  Although Dr. Shiener did not provide an answer to counsel's hypothetical question, as explained above Dr. Shiener gave detailed and extensive testimony relating specifically to petitioner and petitioner's actions.  In light of the testimony directly relating to petitioner, Dr. Shiener's response to a hypothetical question could not

25

have created a reasonable doubt that did not otherwise exist.  Accordingly, petitioner cannot show that he was deprived of his right to present a defense.

H.     *Prejudicial Evidence (Claim VI)*

Petitioner next contends that he was denied a fair trial by the admission of gruesome photographs of the accident scene, and by the testimony of Dr. Sung, who performed the autopsy. The Michigan Court of Appeals rejected this claim, concluding that the evidence was relevant and not unduly prejudicial.  *See Baker*, 2010 WL 746396, at *1-*2.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny

26

the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

Under Michigan law, "[i]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion and prejudice of the jury." *People v. Hoffman*, 205 Mich. App. 1, 18, 518 N.W.2d 817, 826 (1994). As a federal constitutional matter, "[t]he admission of relevant photographs of a crime scene or victim, even if gruesome, does not deprive a criminal defendant of a fair trial." *Skrzycki v. Lafler*. 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) (Gadola, J.); *see also*, *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (admission of gruesome photographs generally does not "raise[] the specter of fundamental unfairness such as to violate federal due process law."); *Pearl v. Cason*, 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002) (Edmunds, J.) ("[A] challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude."); *cf. Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005). Because the photographs and Dr. Sung's testimony were "relevant evidence establishing that the victim died as a result of [petitioner's] actions," *Baker*, 2010 WL

746396, at *1, their admission did not deprive petitioner of a fair trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.    *Sentencing (Claim VII)*

Petitioner next claims that trial court erred in departing upward from the sentencing guidelines in imposing its sentence, and that his sentence was based on inaccurate information. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

Nor is petitioner entitled to relief on his claim that the trial court relied upon inaccurate information in imposing sentence. In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States*

*v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same).  *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41.  It is well established, however, that a *Tucker* violation arises only where the improper information  "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985).  "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence."  *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447).  Thus, to be entitled to habeas relief on this claim  petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

Here, petitioner does not point to any inaccurate factual information that the trial court relied on in departing upward from the sentencing guidelines.  Rather, petitioner contends that the reasons cited by the trial court did not provide "substantial and compelling reasons" for a departure. Specifically, he contends that the trial court erred in departing upward based on: (1) his disregard for human life, because that factor was already accounted for in scoring the guidelines; (2) the basis that he was vague and untruthful, because that factor is not objectively verifiable; and (3) his being a "scofflaw."  The Michigan Court of Appeals agreed that the first two bases were legally inadequate to support an upward departure, but found the third basis sufficient.  *See Baker*, 2010 WL 746396,

29

at *3-*4.  Petitioner does not, however, argue that he was not in fact a scofflaw.  Rather, he argues

only that this is legally insufficient to support an upward departure.  In other words, he does not

argue that he was sentenced on the basis of materially false information, but on the basis of an

erroneous legal determination.  That legal determination, however, is a matter of state law not

cognizable on habeas review.  Because petitioner cannot show that he was sentenced on the basis

of any materially false assumptions of fact, he is not entitled to habeas relief on this claim.

J.      *Cumulative Error (Claim VIII)*

        Petitioner also contends that he is entitled to habeas relief on the basis of the cumulative

effect of the errors he identifies in his habeas petition.  The trial court rejected this claim, concluding

that "[b]ecause there are no errors to cumulate, 'a cumulative effect of errors is incapable of being

found.'" Trial Ct. op., at 8.  This determination was reasonable.

        It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently

prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is

fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting);

*accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983).  This rule, however, applies only to

constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due

process.  *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192

F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir.

Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994).  As noted and discussed in this

Report, none of petitioner's claims establish constitutional error, and thus his cumulative error claim

fails.  Further, because the Supreme Court has never held that non-prejudicial errors may be

cumulated to grant habeas relief, *see Lorraine*, 291 F.3d at 447, "post-AEDPA, not even

constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.    *Ineffective Assistance of Counsel (Claims I & II)*

Finally, petitioner contends that his trial and appellate attorneys were constitutional ineffective in a number of respects. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize

31

that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.*

*Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.*
> *Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant proceedings, knew of materials
> outside the record, and interacted with the client, with opposing counsel, and with
> the judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,
> 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*,
> 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether
> an attorney's representation amounted to incompetence under "prevailing
> professional norms," not whether it deviated from best practices or most common
> custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>       Establishing that a state court's application of *Strickland* was unreasonable
> under § 2254(d) is all the more difficult. The standards created by *Strickland* and §
> 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*,
> 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two
> apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.

The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Trial Counsel*

Petitioner first contends that trial counsel was ineffective in an number of respects. Specifically, petitioner contends that counsel was ineffective for: (1) advising him to decline a plea offer; (2) not developing an intoxication defense; (3) not confirming the expert's facts and data pursuant to Rule 705; (4) failing to call several witnesses; and (5) failing to object to prosecutorial misconduct.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.[2]

a.    *Plea Advice*

Petitioner first contends that counsel was ineffective for advising him to reject a plea offer. According to petitioner, prior to trial counsel informed him that the prosecutor was offering a plea

---

[2]On July 2, 2013, I entered an Order denying petitioner's motions for evidentiary hearing, seeking to develop evidence in support of his ineffective assistance of counsel claims.  Even assuming that an evidentiary hearing were permitted pursuant 28 U.S.C. § 2254(e)(2) (evidentiary hearing not permitted where petitioner failed to develop facts in the state courts), and that evidence developed in a hearing could be used to support petitioner's claims, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C. section 2254(d)(1)–whether the state court determination was contrary to or an unreasonable application of established federal law–must be confined to the record that was before the state court), a hearing is not necessary because a hearing would not "have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963).  As explained in the following analysis, even assuming the truth of petitioner's allegations, for example, that his various uncalled witnesses would have testified as he claims, petitioner cannot show that counsel was ineffective.  Therefore, the Court need not hold an evidentiary hearing.

deal capping his sentence at 50 months' imprisonment, but counsel advised him to reject the plea because the involuntary intoxication/temporary insanity defense would succeed. The trial court rejected this claim, reasoning that "there is no record evidence that the prosecution did, in fact, offer [petitioner a plea deal which included a 50 months sentence," and in any event petitioner could not show that trial counsel's strategy was deficient. Trial Ct. op., at 3. The Court should conclude that this determination was reasonable.

"A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test," as does counsel's deficient advising regarding whether to accept a plea deal. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). To satisfy the prejudice element of the *Strickland* test, petitioner must show "that there is a reasonable probability the petitioner would have pleaded guilty given competent advice." *Id*. Of course, the antecedent question in resolving such a claim is whether the prosecutor in fact extended any plea bargain to defense counsel. *See Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir. 2004); *Wanatee v. Ault*, 101 F. Supp. 2d 1189, 1200-01 (N.D. Iowa 2000). Here, petitioner's claim founders on this antecedent question. Petitioner has presented no evidence to support his claim that the prosecutor offered a plea bargain to his defense counsel. Nor does the record provide any basis to believe that such an offer may have been propounded. On the contrary, a Final Pre-Trial Conference Summary dated January 4, 2008, reflects no final settlement offer from the prosecution. A similar Summary dated March 28, 2008, does reflect a final settlement offer of manslaughter, which was the most serious charge against petitioner, but with no sentence agreement. *See* Respondent's Answer, Ex. B. Thus, the record does not support petitioner's claim that the prosecutor offered any agreement capping his minimum

34

sentence at 50 months' imprisonment.[3]

Moreover, even if the prosecutor made such an offer, petitioner cannot show that counsel's advice to reject the offer was deficient. Although ultimately unsuccessful, counsel presented a viable involuntary intoxication defense well supported by two experts. Indeed, based on this defense the jury acquitted petitioner of the more serious manslaughter charge. And although the trial court ultimately departed upward in imposing sentence, petitioner's sentencing guideline range computed after trial was 58-114 months on the minimum sentence. Counsel could have reasonably concluded that the prosecutor's offer conferred only a minimal benefit of as low as eight months, versus a chance of complete acquittal based on the involuntary intoxication defense.[4] The Sixth Amendment right to counsel extends to the plea bargaining process, and thus "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)) "'[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance

---

[3]On December 5, 2013, petitioner filed a motion to expand the record to include a letter from counsel to him dated August 29, 2008. By Order entered this date, I have granted petitioner's motion for expansion of the record. Contrary to petitioner's argument, this letter does not support petitioner's claim that there was an actual offer by the prosecutor for a specific sentence. In the letter, counsel expresses regret that the trial judge was punitive in sentencing petitioner, and states: "Obviously, if we had known in advance what the ultimate sentence would be, we might have made a different decision about going to trial." This does not suggest that any specific agreement with the prosecutor was in place, much less one capping petitioner's sentence at 50 months. It suggests nothing more than that counsel might have more vigorously pursued a plea bargain.

[4]In the letter submitted by petitioner, counsel indicates that he "thought that the judge would likewise appreciate the defense and be lenient in his sentence because of [petitioner's] lack of willful disobedience of the law based upon the effects of the Ambien on [his] mental state." The fact that counsel was ultimately incorrect in his assessment of the likely sentence after trial does not establish that his advice was deficient. *See Premo*, 131 S. Ct. at 745 ("[H]indsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed."); *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.").

of counsel.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *see also*, *Missouri v. Frye*, 132 U.S. 1399, 1406 (2012). However, the *Strickland* standard is particularly rigorous in the plea bargaining context. Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty . . . [in which] defense attorneys must make careful strategic choices in balancing opportunities and risks," "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011). In short, "substantial deference must be accorded to counsel's judgment." *Id.* at 742. In light of the potentially viable defense counsel presented and the potentially limited benefit offered (according to petitioner) by the prosecution, petitioner cannot show that counsel's advice was unreasonable. *Cf. Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2008) (quoting *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005)) ("When counsel advises the defendant to reject a plea offer, his performance is not objectively unreasonable unless such advice is made 'in the face of overwhelming evidence of guilt and an absence of viable defenses.'") And he certainly cannot show, as he is required to do by § 2254(d)(1), that the trial court's decision finding counsel's advice reasonable was itself unreasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Intoxication Defense

Petitioner next argues that counsel was ineffective for failing to properly present his involuntary intoxication defense. Specifically, petitioner contends that counsel was deficient for "fail[ing] to properly prepare and establish the effects of Ambien[.]" Pet'r's Br., at 23. The trial court rejected this claim, explaining that "[d]efense counsel called two expert witnesses to testify as to the effects that Ambien had on [petitioner] at the time of the accident, and both gave testimony

favorable to the defense. [Petitioner] fails to explain what other evidence he believes counsel should have presented on the effects of Ambien." Trial Ct. op., at 3. This determination was reasonable.

As the trial court observed, counsel presented extensive expert testimony on the effects of Ambien and how petitioner's actions were consistent with the effects of Ambien rather than alcohol. Both experts opined that the accident resulted from petitioner's consumption of Ambien, and that petitioner's intoxication by Ambien was involuntary because he should not have known of the side effects. Although petitioner claims that this evidence was insufficient and that counsel should have done more, he does not point to any particular additional evidence that he believes counsel should have uncovered and presented at trial. As explained above, it is petitioner's burden to establish the elements of his ineffective assistance claim. *See Pierce*, 63 F.3d at 833. Thus, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Here, petitioner has provided no allegation, much less evidence, showing that further investigation by counsel could have uncovered evidence that would have supported his defense. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Confirming Expert's Facts and Data

Petitioner next contends that counsel was ineffective for failing to require that Officer Parson's testimony be supported by a hard copy printout of the breathalyzer test performed by Parson. The trial court rejected petitioner's claim, reasoning that petitioner "failed to establish that a printout did in fact exist, or that, but for counsel's alleged errors, there is a reasonable probability that the result of the proceedings would have been different." Trial Ct. op., at 3. This determination

37

was reasonable.  In particular, petitioner cannot show that a printout of the preliminary breath test results would have made any difference at trial.  First, there is no reason to believe, and petitioner has offered nothing to show, that the result of the preliminary breath test would have been favorable to petitioner.  Second, regardless of petitioner's blood alcohol content when he reported to the jail, there was abundant evidence that petitioner was intoxicated at the time of the crash, including petitioner's admission that he had consumed a pint of vodka, the liquor bottle found in his truck, and that he smelled of liquor after the crash.  Most notably, a blood test performed after the accident showed petitioner to have a blood alcohol content well above the legal limit for driving.  The results of the preliminary breath test taken at the jail prior to the accident, even if favorable to petitioner, would not have cast any doubt on this subsequent evidence of his intoxication by alcohol. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Failing to Call Witnesses

Petitioner next argues that counsel was ineffective for failing to call witnesses in support of his defense.  According to petitioner, counsel should have called five witnesses to testify to his reaction upon learning of the accident; Lorraine Aiello, his girlfriend's mother, to testify that she gave petitioner Ambien; and the Inkster police chief to testify regarding the department's policies and procedures concerning public intoxication at the jail.  The trial court rejected this claim, explaining:

> Defendant has failed to explain how the testimony of these witnesses would have led to a different outcome at trial.  With regard to the five witnesses, defendant's apparent shock at learning the details of the accident does not negate the evidence that defendant voluntarily took sleeping pills and drank vodka before getting in his vehicle and running into the back of the victim's car at 53 mph, killing the victim. As to Lorraine Aiello's testimony, the Court notes that defendant was able to present other evidence establishing that he had ingested two Ambien sleeping pills, and Aiello's testimony would only be cumulative.  Finally, defendant fails to explain

how the proper procedures of the Inkster police department, regarding public intoxication at the jail establish his innocence.

Trial Ct. op., at 4-5. This determination was reasonable.

Counsel's strategic decisions regarding what witnesses to call at trial are "virtually unchallengeable." *Awkal v. Mitchell*, 613 F.3d 629, 641 (6th Cir. 2010). The Court's "concern is not to decide, using hindsight, what [it] think[s] would have been the *best* approach at trial. Instead, [the Court] consider[s] only if the approach ultimately taken was within 'the wide range of reasonable professional assistance' given the circumstances." *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689). Further, because it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see Pierce*, 63 F.3d at 833, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).

Here, petitioner has not presented any testimony or affidavits establishing that the uncalled witnesses would have testified as petitioner claims. More importantly, even assuming that they would have so testified, petitioner cannot show a reasonable probability that the result of the proceeding would have been different. The issue at trial was whether petitioner's alcohol intoxication caused the accident as the prosecution claimed, or was caused by petitioner's Ambien intoxication as petitioner claimed. The secondary issue related to petitioner's defense was whether petitioner knew the effects of Ambien such that his Ambien intoxication, if it caused the accident, was involuntary. None of the witnesses would have addressed these issues. Evidence from

39

witnesses that petitioner had no memory of the accident would have shown that he blacked out, a point that was not greatly disputed, but would not have established whether this blackout resulted from alcohol or Ambien intoxication. Likewise, although Aiello could have testified that she gave two Ambien to petitioner, this point was likewise not disputed. She could not have testified as to what petitioner knew about the effects of Ambien. Nor would the jail procedures have provided any evidence in support of his defense. Even if jail procedures did not require him to be turned away based on his intoxication, this would not negate the fact that petitioner voluntarily chose to drive knowing that he had consumed alcohol. Thus, petitioner cannot show that counsel was ineffective for failing to call these witnesses.

### e. Failing to Object to Prosecutorial Misconduct

Finally, petitioner contends that trial counsel was ineffective for failing to object to prosecutorial misconduct. Related to his claim regarding the facts and data supporting the testimony regarding the preliminary breath test, petitioner contends that the prosecutor committed misconduct by "fail[ing] to confirm and verify the testimony of Officer Parson and Lt. Diaz to the jury." Pet'r's Br., at 33. The trial court rejected this claim, reasoning that petitioner "failed to establish that [] a printout [of the test results] existed," and that petitioner failed to "show[] that the prosecutor engaged in misconduct in failing to present a printout of the test at trial." Trial Ct. op., at 4. This determination was reasonable.

Petitioner does not explain how the failure to provide a printout of the preliminary breath test result constituted objectionable misconduct. Petitioner suggests that the prosecution violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Court held that "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

Here, petitioner cannot establish a *Brady* claim, and therefore he cannot show that counsel was ineffective for failing to object. First, petitioner cannot show that any evidence was suppressed, because there is no evidence that there was ever an actual hard copy of the preliminary breath test result. Although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence."). Second, petitioner cannot show that the result was exculpatory. The police witnesses testified that the machine malfunctioned on the first attempt to take a breath test, and that the second breath test showed petitioner to be intoxicated. Petitioner has offered no reason

41

to believe that a printout of the result would have shown anything different. Third, petitioner cannot show that the print out would have been material in any way. As explained above, regardless of whether the breathalyzer was properly functioning at the jail, and regardless of petitioner's blood alcohol content at that time, there was significant independent evidence of petitioner's intoxication at the time of the accident, in particular the blood test conducted after the crash. Because petitioner cannot establish a *Brady* violation, he cannot show that counsel was ineffective for failing to raise a *Brady* claim. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Appellate Counsel*

Petitioner also contends that appellate counsel was ineffective for failing to raise on direct appeal the claims he raised in his motion for relief from judgment. The trial court rejected this claim, concluding that "[b]ecause none of the issues raised by defendant have merit, defendant cannot show that appellate counsel's performance fell below an objective standard of reasonableness, nor did the performance prejudice the appeal because no attorney is required to present such meritless arguments." Trial Ct. op., at 7. The Court should conclude that this determination was reasonable.

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*. As a general rule, it is "'only when ignored issues are clearly stronger than those

42

presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.  *See id.* at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  Here, petitioner cannot show that counsel was ineffective.  Counsel raised numerous, significant claims on direct appeal, and as explained above each of petitioner's claims is without merit.  Thus, petitioner cannot show that any of the omitted claims were clearly stronger than the claims counsel chose to pursue.  Nor, for the same reason, can petitioner establish prejudice by showing a reasonable probability that the omitted claims would have succeeded on appeal.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

L.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a

43

"substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

44

2.     *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. Because it is clear that petitioner's claims challenging the admission of evidence and the departure from the sentencing guidelines, as well as his cumulative error claim, do not present cognizable grounds for habeas relief, the resolution of these claims is not reasonably debatable. Because there was ample probable cause to support the charges and no double jeopardy violation in the multiple charges, the resolution of petitioner's prosecutorial misconduct claim is not reasonably debatable. Further, because Dr. Shiener was able to testify extensively in petitioner's defense and petitioner never sought to introduce into evidence his written report, the resolution of petitioner's claim asserting denial of his right to present a defense is not reasonably debatable. Because petitioner has failed to show that Juror #7 was biased, or that any other juror was biased as a result of venire members' responses to *voir dire*, the resolution of his jury bias claim is not reasonably debatable. Finally, for the reasons explained above, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable.

M.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

45

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: March 14, 2014                          s/Paul J. Komives_____
                                              PAUL J. KOMIVES
                                              UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 14, 2014.

                                              s/ Kay Doaks_____
                                              Case Manager

46